**Neva B. DINSMORE, Trustee of a certain Trust dated July 16, 1992, Northern Indiana Resources, and Jeff Jones, Appellants–Defendants,**

v.

**LAKE ELECTRIC COMPANY, INC., Appellee–Plaintiff.**

No. 45A03–9805–CV–226.

Court of Appeals of Indiana.

Nov. 30, 1999.

Garry A. Weiss, Merrillville, Indiana, Attorney for Appellants.

## OPINION

SULLIVAN, Judge

Appellants, Neva B. Dinsmore, Trustee of a certain Trust dated July 16, 1992 (Dinsmore), Northern Indiana Resources (NIR), and Jeff Jones [sic], properly known as Jeff Evans, appeal the judgment of the trial court awarding Lake Electric Company, Inc. (Lake) $19,689.19,[1] plus attorney's fees in the amount of $4,144.

We reverse.

Appellants present the following issues for review, which we restate as follows:

(1) Whether the trial court erred in finding the mechanic's lien valid where the last work Lake did for NIR was on an outside bagger system which appellants contend is a piece of portable equipment;

(2) Whether the trial court erred by not finding all work after March 16, 1994 incidental such that it did not extend the time for filing a mechanic's lien; and

(3) Whether the trial court erred in finding that Dinsmore consented to work done by Lake upon the request of NIR.

The record reveals that on December 2, 1993, NIR purchased an asphalt processing facility located upon real property

---

1. The trial court did not explain why the judgment was entered for $19,689.19 even though the amount claimed by Lake on the notice of intention to hold mechanic's lien was $19,000. However, it appears the trial court merely subtracted the amount NIR had paid from the actual amount due and owing.

owned by Dinsmore Farms. As the facility and land upon which it is located were owned by two different entities, NIR entered into a lease agreement with Dinsmore Farms for the use of the land. NIR screens, bags, and dries various products. The asphalt facility had not been used for a period of time, and it was necessary to make conversions and repairs to get the plant up and running. Marvin Crook, President of NIR, contacted Raymond Ferry of Lake and asked that Lake perform the necessary electrical work so the facility would meet state and local requirements in order to resume electrical service and be able to operate. Lake verbally agreed to perform the work required, but there was never a written contract between NIR and Lake.

Over a period of two years, Lake performed various work for NIR. For a period of time from November 8, 1993 to March 16, 1994, Lake furnished labor and materials for electrical repairs and installation at NIR to get the facility in operating order. Invoices were sent to NIR on or about April 1, 1994, and some partial payments were made to Lake by NIR with the promise that more money would be forthcoming. After this, Lake did not do any work for NIR until sometime in 1995 when it built a control system.[2] On April 20, 1995, Lake repaired the burner control and fixed the outside bagger system for NIR. Finally, Lake returned to NIR on May 20, 1995, to repair the outside bagger system. The work was completed on May 22, 1995. This was the last day that Lake did any work for NIR.

Lake filed its notice of intention to hold a mechanic's lien on July 21, 1995, for all work from November 8, 1993 to May 22, 1995. The lien was placed on the land owned by Dinsmore Farms, as well as "all buildings, other structures, and improvements located thereon." Record at 242.

After a bench trial, the trial court entered a judgment in favor of Lake for $19,689.19 and awarded attorney's fees in the amount of $4,144. The trial court granted appellants' Motion to Continue Sheriff's Sale pending appeal and upon the posting of $30,000 bond.

■ Initially, we note that appellee, Lake, has not favored this court with a brief. In such cases, we may apply a less stringent standard of review and reverse the decision of the trial court if appellant makes a *prima facie* showing of reversible error. *Town and Country Ford, Inc. v. Busch* (1999) Ind.App., 709 N.E.2d 1030, 1032. The *prima facie* error rule relieves this court from the burden of controverting arguments advanced for reversal, a duty which properly remains with appellee. *Id.* "In this context, 'prima facie' means at first sight, on first appearance, or on the face of it." *Johnson County Rural Elec. Membership Corp. v. Burnell* (1985) Ind. App., 484 N.E.2d 989, 991. Be this as it may, it is within our discretion to decide a case upon the merits. *Tri–Professional Realty, Inc. v. Hillenburg* (1996) Ind.App., 669 N.E.2d 1064, 1067, *trans. denied.* We choose to do so here.

■ In this case, Lake requested special findings of fact and conclusions of law pursuant to Ind. Trial Rule 52(A). On appeal of a bench decision, we will not set aside a judgment unless it is clearly erroneous. T.R. 52(A); *Busch, supra,* 709 N.E.2d at 1032. To determine whether a judgment is clearly erroneous, we give deference to the trial court's decision by considering only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will not reweigh the evidence or assess the credibility of witnesses. A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made.

---

2. The record does not reveal the exact date(s) of work done to build the control system, but an invoice for this work is dated April 26, 1995. However, documents in the record showing the hours employees of Lake worked each month for NIR establish that March 16, was the last date worked in 1994 and April 20, 1995, was the first date worked in 1995.

■ Upon appeal, appellants contend that the trial court was clearly erroneous in finding Lake's mechanic's lien valid because the last work done by Lake was on an outside bagger system (bagger) which they argue is not subject to a mechanic's lien because it is a portable piece of equipment and is not affixed to the real property. Appellants further maintain that because the last work done does not support a valid mechanic's lien, Lake did not meet the 60 day deadline for filing its notice of intention to hold a mechanic's lien. Although the issue concerning the portability of equipment repaired by Lake was not addressed in the trial court's special findings of fact and conclusions of law, this issue was properly before the trial court because NIR raised the portability issue as an affirmative defense in its answer and testimony at trial from witnesses called by both sides clearly addressed this issue.

In support of their contention that repairs on portable equipment do not fall within the mechanic's lien statute, appellants maintain that section one of the mechanic's lien statute lists the type of work for which a mechanic's lien may be filed and includes work done on a variety of structures permanently affixed to real estate, but does not include any type of portable equipment.

Ind.Code 32–8–3–1 (Burns Code Ed. Repl. 1995)[3] provides that "contractors . . . and all other persons performing labor or furnishing materials or machinery . . . for the erection, altering, repairing or removing any house, mill, manufactory, or other building, bridge, reservoir, systems of waterworks, or other structures . . . may have a lien separately or jointly upon the house, mill, manufactory . . . and, on the interest of the owner of the lot or parcel of land on which it stands or with which it is connected to the extent of the value of any labor done, material furnished, or either. . . ."

■ If Lake's repair work on the bagger is subject to a mechanic's lien, it must be upon the grounds that the bagger is a structure or a fixture. It is well settled that fixtures are subject to a mechanic's lien. *See McFarlane v. Foley* (1901) 27 Ind.App. 484, 60 N.E. 357, *reh'g denied; Menzenberger v. American State Bank* (1935) 101 Ind.App. 600, 198 N.E. 819, *reh'g denied; Display Fixtures Co. v. R.L. Hatcher* (1982) Ind.App., 438 N.E.2d 26 n. 1; *Mann v. Schnarr* (1950) 228 Ind. 654, 95 N.E.2d 138; 19 INDIANA LAW ENCYCLOPEDIA, *Mechanics' Liens* § 21 (1959). This necessarily leads to the conclusion that personal property or non-fixtures are not lienable. *See Mann, supra* at 143. Thus, in the instant case, the issue becomes whether a bagger, a piece of equipment, became a fixture.

■ A piece of equipment is typically thought of as personal property. *See Morris v. G. Rassel, Inc.* (1991) Ind.App., 576 N.E.2d 596, 599 (stating that equipment is clearly personal property). In order to determine whether a particular article has become so identified with real property as to become a fixture, Indiana uses a three part test which considers: 1) actual or constructive annexation of the article to the realty, 2) adaptation to the use or purpose of that part of the realty with which it is connected, and 3) the intention of the party making the annexation to make the article a permanent accession to the freehold. *Citizens Bank of Greenfield v. Mergenthaler Linotype Co.* (1940) 216 Ind. 573, 25 N.E.2d 444; *Lau v. Indiana Nat'l Bank* (1987) Ind.App., 506 N.E.2d 70; *Citizens Bank of Michigan City v. Hansom* (1986) Ind.App., 497 N.E.2d 581. Intention may be determined by the "nature of the article, relation and situation of the parties making the annexation, and the structure, use, and mode of annexation." *Mergenthaler, supra* at 448.

---

**3.** This code section was amended in 1999. I.C. 32–8–3–1 (Burns Code Ed. Repl. 1995 & Supp. 1999). However, the amendments are not pertinent to any issues addressed upon appeal.

"It is the third part of the test which is controlling. If there is doubt as to intent, the property should be regarded as personal." *Hansom, supra* at 584.

■ The bagger sits on a pallet behind one of the buildings at NIR's facility. As described by an employee of Lake, the bagger is "a piece of portable equipment" that is moved up to a control center and can be detached from the control center and moved in a truck. Record at 274–75. There is some confusion as to how the bagger receives its power,[4] but, be that as it may, it can be moved either by unplugging it or disconnecting the wiring. Even if the first two tests were met, it was clearly never the intention of NIR to make the bagger a permanent accession to the freehold. An NIR employee, Jeff Evans, testified that the bagger was on a pallet so it could be moved more easily. Also, NIR leases the land upon which its facility and equipment rest. According to the lease agreement, NIR may remove the plant, any buildings, and any tangible property at the termination of the lease. This provision in the lease agreement and the fact that NIR does not own the land upon which its equipment rests, are further evidence that NIR did not intend for any of its equipment to become a fixture or permanent accession to the freehold. Thus, the bagger is a portable piece of equipment and not a fixture.

■ The bagger may appear to be more in the nature of a trade fixture. A trade fixture is " 'personal property put on the premises by a tenant which can be removed without substantial or permanent damage to the premises and is capable of

being set up or used in business elsewhere.'" *Roebel v. Kossenyans* (1994) Ind.App., 629 N.E.2d 241, 242–43 (citations omitted). *See also* 14 INDIANA LAW ENCYCLOPEDIA, *Fixtures* § 8 (1959). NIR leases the land upon which the bagger was placed. The bagger is outside and thus, can be removed without substantial or permanent damage to the premises. Any marks or holes in the ground could be covered with fresh soil. Moreover, the bagger could be used in business elsewhere.[5] Therefore, even if we were to determine that the bagger is a trade fixture, the repair work done on it is not subject to a mechanic's lien. *See City of Portland v. Indianapolis Mortar & Fuel Co.* (1914) 57 Ind.App. 166, 106 N.E. 735 (stating that personal property in the nature of trade fixtures, is not subject to a mechanic's lien under our statute). *See also* 56 C.J.S. *Mechanics' Liens* § 23 (1992) (asserting that generally, the mechanic's lien statutes do not allow a lien for trade fixtures).

Finally, we must consider whether the bagger could constitute "other structures" within I.C. 32–8–3–1. While "structure" is not defined in the statute, there are a few cases that were decided over one hundred years ago which discuss the meaning of "structure" in the context of the mechanic's lien statute. In *McElwaine v. Hosey* (1893) 135 Ind. 481, 35 N.E. 272, 276, the court noted that a "boiler, engine, shafting, beam, derrick, reel, ropes, and drill, when put in place and action ... constitute a structure." Similarly, in *Haskell v. Gallagher* (1898) 20 Ind.App. 224, 50 N.E. 485, 485–86 *overruled on other grounds by Ni-*

---

4. Michael Spicknall, a Lake employee, describes the outside bagger as being hooked up to a control center that is connected to underground wiring, but later stated that even the control center could be moved if the wiring were disconnected. However, testimony from NIR president, Marvin Crook, describes the bagger as being plugged in to an electrical box sitting on a hopper, while NIR employee, Jeff Evans, stated that it can also be wired to the electrical box.

5. The record reveals that the outside bagger is described as a portable piece of equipment by a Lake employee. Also, NIR's lease agreement for the land provides that NIR may remove any tangible properties upon expiration of the term of the lease or sooner, and classifies the plant and any buildings as trade fixtures that may be removed by NIR at the termination of the lease. An existing metal building, however, was to stay upon the land.

agara Oil Co. v. McBee, 45 Ind.App. 576, 91 N.E. 250, this court defined structure as "something composed of parts or portions which have been put together by human exertion" and applying this definition, held that an oil well constituted a structure.

A tank has also been classified as a structure and under a fixture analysis thus deemed a proper subject of a mechanic's lien. *Parker Land & Improvement Co. v. Reddick* (1897) 18 Ind.App. 616, 47 N.E. 848. *But see Parker Land & Improvement Co. v. Reddick* (1897) 20 Ind.App. 700, 48 N.E. 1109, a companion case which adopted the reasoning of the earlier decision as being "in all respects identical" but in which upon rehearing, *Parker Land & Improvement Co. v. Reddick* (1898) 20 Ind. App. 700, 50 N.E. 1125, Judge Wiley set forth well-founded reasons for dissent asserting that the tank was not a "structure" nor a fixture to the freehold and thus, not subject to a mechanic's lien.[6]

Be that as it may, even within the context of Indiana case law, the bagger is a piece of equipment, not a structure.

> "[T]he meaning of the word 'structure,' as used in a statute authorizing a lien for labor performed or materials furnished in connection with the creation, improvement, or repair of a structure, is to be ascertained by referring to the meaning of the words associated with it, and where all the associated terms designate classes of property attached or appurtenant to, or a part of, the land, the word 'structure' is to be likewise restricted, notwithstanding it may be susceptible of other definitions."

56 C.J.S. *Mechanics' Liens* § 18 (1992) (footnotes omitted). The words associated with "other structures" in I.C. 32–8–3–1 include "house, mill, manufactory, or other building, bridge, reservoir, [and] systems of waterworks. . . ." Each of these is attached to or is a part of the land. A portable piece of equipment such as the bagger is neither attached to nor a part of the land and as such, is not a structure.

Because we conclude that the bagger is neither a structure nor a fixture, but more in the nature of a trade fixture, the trial court clearly erred in finding the mechanic's lien valid for work done on the bagger.

 According to Ind.Code 32–8–3–3 (Burns Code Ed. Repl. 1995) and case law construing it, in order to find a mechanic's lien valid, a notice of intention to hold mechanic's lien must be filed within 60 days[7] of the last work done. *Riddle v. Newton Crane Serv., Inc.* (1996) Ind.App., 661 N.E.2d 6, *trans. denied; McCorry v. G. Cowser Const., Inc.* (1994) Ind.App., 636 N.E.2d 1273. In order for the mechanic's lien filed by Lake on July 21, 1995 to be timely, the last work must have been done within the 60 days prior to that date. The last day Lake performed work for NIR was May 22, 1995; however, as we have held, work done on the bagger equipment on that date and on May 20, 1995 is not subject to a mechanic's lien. Because the only notice of intention to hold mechanic's lien was filed by Lake on July 21, 1995, and no other work was done within 60 days of July 21, 1995, the notice of intention to hold mechanic's lien was not timely filed.[8] Thus, the mechanic's lien is not valid for *any* work done by Lake.

Because we find the first issue dispositive, we need not address appellants' other arguments concerning whether work after March 16, 1994, was incidental or whether Dinsmore consented to the work.

---

6. Judge Wiley had not participated in the first *Reddick* decision, but dissented in the companion case without a statement of reasons.

7. In a recent amendment of I.C. 32–8–3–3 (Burns Code Ed. Repl. 1995 & Supp. 1999), effective July 1, 1999, the 60 day period was changed to 90 days.

8. According to documents included in the record, the last work done by Lake before May of 1995 was completed on April 27, 1995.

For the foregoing reasons, we reverse the judgment of the trial court, the award of attorney's fees, and order of sale.[9]

RILEY, J., and MATTINGLY, J., concur.

---

9. We would observe that although the mechanic's lien is invalid, such does not prevent Lake from suing NIR to recover money due and owing.